Honorable John B. Johnson Chairman State of New York Dormitory Authority Honorable Robert L. Polk Chairman City University Construction Fund
The question has been raised whether the City University Construction Fund (CUCF) and the City University of New York (CUNY) are authorized to agree with the New York State Dormitory Authority (Authority) that annual payments to the Authority under a lease are to include an amount for a special reserve fund that is used in emergencies to protect the interests of bondholders secured by real property leased to higher educational institutions. We are of the opinion that such payments are authorized.
The Authority is a State public benefit corporation (Public Authorities Law, § 1677) that finances the construction of housing units and dormitories and attendant facilities for higher educational institutions, both public and private as defined in the law (id., §§ 1676[2] and 1680[1]). The Authority obtains its funds by issuing bonds secured by lease agreements under which the educational institution agrees to pay annual rent in an amount sufficient to meet applicable debt service, the Authority's costs of operation, and an appropriate share of a special reserve fund.*
The Authority clearly has the power to create a special reserve fund (Public Authorities Law, § 1682[4][f]) and to require contributions from lessees (id., § 1680[2][e][3]). Equally clear is the power of CUNY and CUCF to agree to charges in lease agreements with the Authority (Education Law, § 6276[a]). Thus, the only question that has been raised and that requires an answer is whether the Legislature had the power to authorize public entities to contribute to a fund which might be used to forestall or compensate for a private institution's default on its lease commitments. This, of course, is a question of whether the State would be giving or lending its money "in aid of any private corporation or association, or private undertaking" (NY Constitution, Art VII, § 8[1]; to the extent that City funds are involved, the same prohibition on "gifts and loans" is found in Art VIII, § 1). We are of the opinion that contributions to the special reserve fund are not prohibited by the Constitution.
Even if one assumes that, in theory, a contribution to the reserve fund is in "aid" of a private undertaking, it does not necessarily follow that the aid is constitutionally prohibited. We have recently said that if the State derives a direct benefit from a program that includes a grant of public money to a private entity and if that direct benefit is in furtherance of the public interest, the constitutional prohibition does not apply (1980 Op Atty Gen 88 and cases cited; 1979 id. 60). The direct benefit to the State in an across-the-board special reserve fund is obvious. When the Authority goes to market for funds, the cost of those funds are directly affected by the risks of non-payment as seen by those who purchase Authority bonds. A reserve fund for emergencies decreases the bondholders' risks. Thus, the cost of borrowing is lower which, in turn, means that the beneficiaries of the loans, the lessees, are charged less for debt service. Both public and private entities benefit. Moreover, while it is true that a private entity in financial trouble may be benefited by the reserve fund to which public entities contribute, it is equally true that a public entity may be benefited by the same fund to which private entities contribute. Viewed this way, it is even arguable that, rather than a permissible public grant, the arrangement is in the nature of a bargained quid pro quo.
We conclude that the City University Construction Fund and the City University of New York may enter into a lease agreement with the New York State Dormitory Authority that requires an annual contribution to a special reserve fund usable for the benefit of lessees that are not public entities.*
* We are advised that this special reserve fund had its genesis in the State's 1975-76 fiscal crisis. With one exception, all participants in this program of financing housing units and dormitories, both public and private, including the State University of New York, have agreed to an increase in annual payments to cover the contribution to the special reserve fund. The exception is CUNY and its CUCF. The Authority, in anticipation of issuing bonds for facilities for CUNY, has advised CUCF that from now on it will have to increase its annual payments by an amount necessary to cover contributions to the special reserve fund not only for the projected bond issue, but for all existing CUNY/CUCF bonds. For the City's Fiscal Year 1982-83, this amounts to $325,000. Total payments to the Authority for the City's Fiscal Year total $101 million (letter from the Division of the Budget, July 8, 1982). The State's appropriation for CUNY includes an unallocated sum of $1.9 million from which an allocation can be made to meet the new special reserve fund requirement (ibid.).
* It was suggested that such a payment by CUCF of State money at this time might be invalid because there was no appropriation for that purpose. As our footnote, supra, shows, there are ample appropriated funds for the obligations of CUCF.